<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHAWN KATZ, | |
| Plaintiff, | |
| v. | Case No. 2:22-cv-07069 (BRM) (JRA) |
| TATA CONSULTANCY SERVICES, LTD., | **OPINION** |
| Defendant. | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant Tata Consultancy Services, Ltd. ("TCS"). (ECF No. 15.) Plaintiff Shawn Katz ("Katz") filed an opposition to the motion. (ECF No. 21.) TCS filed a reply. (ECF No. 23.) Having reviewed the parties' submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, TCS's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.  BACKGROUND

For the purpose of the motion to dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Katz. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

1

This putative class action arises from TCS's allegedly discriminatory employment practices that negatively "impact[] non-South Asians and non-Indians across the company, as well as applicants, who are disfavored in [] hiring, staffing, promotion, and termination/retention decisions." (Am. Compl. (ECF No. 14) ¶ 1.) TCS is an information technology ("IT") "consulting company that is headquartered in Mumbai with its U.S. headquarters in Edison, New Jersey." (*Id.* ¶ 4.) "TCS operates on a project-based model where companies contract with TCS to provide IT services . . . in lieu of maintaining in-house IT personnel." (*Id.* ¶ 9.) TCS then deploys TCS employees to service the client company until the contract terminates. (*Id.* ¶ 10.) Employees are assigned to and removed from projects by TCS. (*Id.*) Once TCS employees cease work on a project, they are "place[d] in an unallocated status" which is commonly referred to as being placed "on the bench." (*Id.*) When TCS employees are placed on the bench, the employee is unable to service any TCS clients until the employee fills other positions for different TCS clients. (*Id.*) To secure a new position with a different TCS client, benched employees must apply for specific roles with specific clients within TCS. (*Id.* ¶ 9.) "Both existing TCS employees and external applicants must apply and interview for positions on TCS projects and compete for [] roles." (*Id.*) If existing TCS employees remain on the bench for too long, TCS will terminate their employment. (*Id.* ¶ 10.)

Katz is a naturalized U.S. citizen and resident of Texas, of Israeli national origin and Caucasian race, who brings several claims against TCS on behalf of himself and of a class of "[a]ll non-South Asians and non-Indians who (1) were employed by TCS, and met the criteria for a promotion, but were not promoted, and/or (2) were employed by TCS and were involuntarily terminated." (*Id.* ¶¶ 2, 3, 30.)

Katz began his employment with TCS in May 2013 when he joined as a "Program Manager" for TCS's client, Microsoft. (*Id.* ¶ 23.) The position "Program Manager" is considered a level "C3B" position within TCS. (*Id.* ¶ 24.) In 2021, Katz transitioned to a new "C3B" position as "Business Relationship Manager" ("BRM") for another TCS client, CommonSpirit Health. (*Id.*) At the time Katz took the role, TCS informed him that despite BRM being a level "C3B" position, he would be promoted to level "C4" in his role as BRM. (*Id.*) In order to be promoted to level "C4", TCS's promotions policy requires the employee to: (1) have worked in a customer-facing role, (2) have spent at least three years in a level "C3B" position, and (3) have received an A or B rating for at least three years. (*Id.* ¶ 26.) By May 2022, Katz spent nine years in a customer-facing, level "C3B" role, and had received a B rating for at least five years in a row. (*Id.*) The "Client Partner of the CommonSpirit Health account" and two of Katz's previous managers recommended him for promotion. (*Id.*) Katz was instead removed from the account and placed on the bench in April 2022. (*Id.*) Katz was informed his removal was due to budget cuts and was not related to his performance. (*Id.*) While on the bench, Katz proactively searched for new positions to fill by filing applications to thirty-six different roles. (*Id.* ¶ 28.) None of Katz's applications were successful, and he was ultimately terminated on June 13, 2022. (*Id.* ¶ 29.)

Katz alleges TCS engages in a "systematic pattern or practice of discrimination against non-South Asian and non-Indian applicants and employees with respect to hiring, staffing, benching, termination and promotion decisions" by: (1) preferentially employing individuals of South Asian descent over individuals of non-South Asian descent, and (2) intentionally securing work visas for South Asian employees located outside of the U.S. and then preferentially utilizing these visa-holding employees over non-visa-holding employees for positions in the U.S. (*Id.* ¶¶ 11, 14–17, 29.)

3

On December 7, 2022, Katz filed a Complaint against TCS. (ECF No. 1.) On March 3, 2023, Katz filed the Amended Complaint on behalf of himself and of a class of "[a]ll non-South Asians and non-Indians who (1) were employed by TCS, and met the criteria for a promotion, but were not promoted, and/or (2) were employed by TCS and were involuntarily terminated," alleging: (1) "Disparate Treatment on the Basis of Race in Violation of 42 U.S.C. § 1981" ("Count I"), (2) "Disparate Treatment on the Basis of Race and National Origin [in] Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2" ("Count II"), and (3) "Disparate Impact on the Basis of Race and National Origin [in] Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2" ("Count III"). (ECF No. 14 ¶¶ 2, 30, 39, 44, 49.) Katz seeks injunctive and declaratory relief, and damages. (*Id.* at 22–23.) On March 17, 2023, TCS filed a motion to dismiss. (ECF No. 15.) On April 3, 2023, Katz filed an opposition to the motion. (ECF No. 21.) On April 10, 2023, TCS filed a reply. (ECF No. 23.)

## II.   LEGAL STANDARD

### A.   Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation."

*Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pleaded; it must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. *Id*. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### B.    Rule 12(f)

A court may, upon motion or *sua sponte*, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation." *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002) (internal quotations omitted). However, "[b]ecause of the drastic nature of the remedy, . . . motions to strike are usually 'viewed with disfavor' and will generally 'be denied unless the allegations have no possible relation to the controversy and may cause prejudice

to one of the parties, or if the allegations confuse the issues.'" *Id.* (citing *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993)); *see also Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 702 (D.N.J. 2013) (explaining that motions to strike are extremely disfavored). "A court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)." *Kim v. Baik*, Civ. A. No. 06-3604, 2007 WL 674715, at *5 (D.N.J. Feb. 27, 2007) (citing *River Rd. Dev. Corp. v. Carlson Corporation-Northeast*, Civ. A. No. 89-7037, 1990 WL 69085, at *2 (E.D. Pa. May 23, 1990)).

## III.   DECISION

TCS contends Katz's Title VII disparate impact claim (Count III) and all claims for injunctive relief should be dismissed in their entirety. (ECF No. 15 at 5–11.) Additionally, TCS asserts all of Katz's claims should be dismissed to the extent they are based on an alleged failure to hire or place. (*Id.* at 14–16.) TCS sets forth the following arguments in support of these contentions: (1) "Katz has not plead a facially neutral policy that adversely impacted a protected class"; (2) "Katz lacks standing to assert claims for injunctive relief because, as a former employee, he cannot show he will be subject to discrimination in the future as a matter of law"; and (3) Katz alleges to have been hired and subsequently placed by TCS on at least three separate occasions. (*Id.* at 3–4.) Katz contends TCS's motion to dismiss should be denied in its entirety because: (1) "[he] has adequately alleged disparate impact where he has alleged specific employment policies or practices that have a disparate impact"; (2) he has standing to seek injunctive relief because he seeks to be reinstated as a TCS employee; and (3) "while Katz does not assert a claim for discrimination in hiring or placement, his allegations related to hiring and placement can properly

be used to support the claims his [sic] does assert." (ECF No. 21 at 5.)[1]

### A.      Disparate Impact Claim Under Title VII

TCS argues Katz's disparate impact claim under Title VII must be dismissed because Katz only alleges intentional discrimination and fails to identify a facially neutral policy that adversely impacts a protected class. (ECF No. 15 at 5.) Katz asserts his disparate impact claim under Title VII cannot be dismissed for three reasons: (1) facial neutrality is not a required element of disparate impact, (2) he has identified facially neutral policies or practices, and (3) he may assert a disparate impact claim in the alternative. (ECF No. 21 at 7, 10, 15.)

> Title VII . . . prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact').

*Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). "Title VII's disparate-impact provision prohibits employment practices that have the unintentional effect of discriminating based on race." *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011), *cert. denied*, 567 U.S. 906 (2012). "[T]he 'touchstone' for disparate-impact liability is the lack of 'business necessity': 'If an employment practice which operates to exclude [minorities] cannot be shown to be related to job performance, the practice is prohibited.'" *Ricci*, 557 U.S. at 578 (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971) (second alteration in original)).

"In order to state a claim for disparate impact, a plaintiff is required to identify the specific policy at issue." *MacLean v. Wipro Ltd.*, Civ. A. No. 20-3414, 2022 WL 4550629, at *6 (D.N.J.

---

[1] The parties do not dispute that Katz "has exhausted his administrative remedies and has complied with the statutory prerequisites of filing a Title VII complaint by filing a charge against TCS with the U.S. Equal Employment Opportunity Commission and receiving a notice of right to sue." (ECF No. 14 ¶ 3.)

Sept. 29, 2022); *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d at 476, *cert. denied*, 567 U.S. 906 (2012). "The failure to do so is fatal to [a] disparate impact claim." *Graves v. Ancora Psychiatric Hosp.*, Civ. A. No. 10-369, 2012 WL 6153428, *4 (D.N.J. Dec. 11, 2012). "Unlike the disparate treatment theory of liability, a claim of disparate impact does not require proof of discriminatory motive." *MacLean v. Wipro Ltd.*, Civ. A. No. 20-3414, 2022 WL 4550629, at *6 (D.N.J. Sept. 29, 2022) (quoting *Crawford v. Verizon Pa., Inc.*, 103 F. Supp. 3d 597, 606 (E.D. Pa. 2015)). Further, a Title VII disparate impact claim cannot survive where the specific policy identified is facially discriminatory, rather than facially neutral. *Green v. City of Philadelphia*, Civ. A. No. 21-1034, 2022 WL 1165644, at *2 (3d Cir. Apr. 20, 2022) ("[T]he plaintiff must establish a prima facie case of disparate impact by 'demonstrat[ing] that application of a facially neutral standard has caused a significantly discriminatory . . . pattern.'") (quoting *N. Hudson Reg'l*, 665 F.3d at 476); *see also Healey v. Southwood Psychiatric Hosp.*, 78 F.3d 128, 131 (3d Cir. 1996) ("Analysis under disparate impact is not appropriate where plaintiff claims injury based on a facially discriminatory policy."); *MacLean*, 2022 WL 4550629, at *8–9 (dismissing plaintiffs' disparate impact claims and finding "their claims sound in disparate treatment, as opposed to disparate impact" because they "fail[ed] to allege a facially neutral employment practice") (emphasis omitted). A policy is facially neutral for purposes of Title VII where the policy does not discriminate on the basis of race, color, religion, sex, or national origin on its face, but nevertheless causes a significant discriminatory hiring pattern. *N. Hudson Reg'l*, 665 F.3d at 476; *Newark Branch, N.A.A.C.P. v. Town of Harrison, N.J.*, 940 F.2d 792, 798 (3d Cir. 1991). Even when a facially neutral policy is identified, allegations that the policy was applied in a deliberately discriminatory way prevents the policy from serving as the basis for a disparate impact claim. *See Rauceo v. Phila. Gas Works*, Civ. A. No. 19-4279, 2020 WL 550613, at *3 (E.D. Pa. Feb. 3, 2020);

*Chavarria v. Phila. Gas Works*, Civ. A. No. 19-4428, 2020 WL 529892, at *3 (E.D. Pa. Feb. 3, 2020).

Once a plaintiff identifies a specific, facially neutral employment policy, a plaintiff must "prove a significant statistical disparity and to 'demonstrate that the disparity [he] complain[s] of is the result of one or more of the employment practices that [he is] attacking.'" *N. Hudson Reg'l*, 665 F.3d at 476, *cert. denied*, 567 U.S. 906 (2012); *see also Cronin v. Booz Allen Hamilton Inc.*, Civ. A. No. 21-2085, 2022 WL 3357869, at *4 (3d Cir. Aug. 15, 2022).

Here, Katz "fail[s] to state a claim for disparate impact under Title VII because [his] allegations sound more in disparate treatment," rather than disparate impact. *MacLean*, 2022 WL 4550629, at *10. Katz sets forth three arguments to oppose dismissal of his disparate impact claim none of which the Court finds persuasive.  (ECF No. 21 at 5–20.)

First, Katz argues facial neutrality is not required to sustain a disparate impact claim. (*Id.* at 7.) Katz cites several cases outside of the Third Circuit where courts have interpreted *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988), to implicitly permit disparate impact claims based upon any employment practice, not just facially neutral practices. (ECF No. 21 at 7–8 (citing *Adams v. City of Indianapolis*, 742 F.3d 720, 732 (7th Cir. 2014); *Tolton v. Jones Day*, Civ. A. No. 19-945, 2020 WL 2542129, at *24 (D.D.C. May 19, 2020); *Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 156 (1st Cir. 1990)).) Additionally, Katz points to occasional omissions from the Third Circuit regarding neutrality as an element of a disparate impact claim. (*Id.* (citing *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 642 (3d Cir. 1993); *Stagi v. Nat'l R.R. Passenger Corp.*, 391 F. App'x 133, 136 (3d Cir. 2010)).)

The Court disagrees and is not bound by appellate decisions rendered outside of the Third Circuit. *Noto v. U.S.*, 598 F. Supp. 440, 442 n.6 (D.N.J. 1984). Additionally, neither of the Third

Circuit opinions Katz cites (*see* ECF No. 21 at 8) substantively deals with the neutrality factor in

its ruling. *Josey*, 996 F.2d 632, 642 (3d Cir. 1993); *Stagi*, 391 F. App'x 133, 136 (3d Cir. 2010).

Even if these opinions did substantively address the neutrality factor, the Third Circuit's most

recent articulation of the elements required to state a claim for disparate impact makes clear, that

"[t]o state a prima facie case for disparate impact, a plaintiff must identify a specific, *facially*

*neutral* employment policy, then proffer statistical evidence that the policy caused a significant

[discriminatory] disparity." *Cronin*, 2022 WL 3357869, at *4 (emphasis added).

Second, Katz argues he has identified four facially neutral policies: (1) "TCS has a

preference for and prioritizes [] visa holders for U.S. positions"; (2) "TCS's policy of terminating

employees who remain on the bench for too long"; (3) "TCS's policy of promoting only those who

have served a set number of years with TCS and received consecutive high appraisal scores"; and

(4) "TCS's policy of allowing TCS personnel in India to review and revise performance scores."

(ECF No. 21 at 11, 13, 14.) None of the policies identified by Katz are facially neutral because

each sounds in disparate treatment, rather than disparate impact. *See MacLean*, 2022 WL 4550629,

at *10. Courts in this district have considered similar policies before and concluded that there is

no cause of action for disparate impact. *Id.* at *8–10.

In *MacLean*, plaintiff Gregory MacLean ("MacLean") contended defendant Wipro Limited

("Wipro") discriminated against him because he was of non-South Asian or Indian descent. *Id.*

MacLean brought a Title VII disparate impact claim and identified employment policies nearly

identical to Katz's identified policies. *Id.* at *8. MacLean argued that employer Wipro: (1)

"intentionally secures visas for South Asian and Indian individuals . . . [and] because of this

discriminatory practice, 'non-South Asians and non-Indian individuals are often displaced from

their current positions in favor of South Asian and Indian visa-ready individuals,'" *id.* at *9

(emphasis omitted) (quoting *MacLean* Am. Compl. ¶ 20); (2) gives hiring and employee allocation preference to South Asian and Indian applicants, *id.*; (3) awarded higher approval scores and promotions to South Asians and Indians; and (4) discriminated against non-South Asians and Indians by preferentially "'filling positions with South Asian and Indian visa workers and South Asian and Indian individuals hired within the U.S.,' which results in non-South Asian and non-Indian employees being relegated to the bench and/or unable to locate new assignments with disproportionately greater frequency." *Id.* at *10 (quoting *MacLean* Am. Compl. ¶ 23). MacLean argued these four policies were facially neutral and could serve as the basis for his disparate impact claim. *Id.* The court found that each of these four allegedly discriminatory employment practices that MacLean has identified were not facially neutral because "the allegations suggest that these practices have been enacted and enforced by Wipro to carry out the company's preference for South Asian and Indian workers." *Id.* Therefore, MacLean failed to state a claim for disparate impact under Title VII. *Id.*

Katz's allegations are equally unable to establish a *prima facie* case for his disparate impact claim. TCS's benching, hiring, and termination policies to maximize visa-holders, who Katz alleges are "almost exclusively South Asian," followed by TCS prioritizing those visa-holders for TCS positions, are not facially neutral policies because Katz, like MacLean, alleges TCS implements these policies to further a preference for South Asians and Indians. (ECF No. 14 ¶ 13 ("TCS's project staffing decisions similarly reflect a preference for South Asians and Indians")); *see MacLean*, 2022 WL 4550629 at *10. Additionally, TCS's appraisal and promotional policies are not facially neutral because Katz alleges TCS intentionally awards visa-holders "higher appraisal scores and promotes them more frequently than their non-South Asian and non-Indian

counterparts." (ECF No. 14 ¶ 18); *see MacLean*, 2022 WL 4550629, at \*10. These allegations sound in disparate treatment, rather than disparate impact. *MacLean*, 2022 WL 4550629, at \*10.

Third, Katz argues dismissal of his disparate impact claim is inappropriate because he may assert the claim in the alternative. (ECF No. 21 at 15.) While a plaintiff may assert both disparate impact and disparate treatment claims on the same set of facts, *see, e.g., Smith v. City of Jackson, Miss.*, 544 U.S. 228, 231 (2005), both claims must satisfy their respective elements to survive a motion to dismiss for failure to state a claim. *See generally Iqbal*, 556 U.S. at 675. As explained above, Katz has failed to satisfy the elements required to state a *prima facie* Title VII disparate impact claim. Accordingly, TCS's Motion to Dismiss Katz's Title VII disparate impact claim (Count III) is **GRANTED**.

## B.      Injunctive Relief

TCS argues Katz does not have standing to seek injunctive relief because he has failed to show "he is actively seeking reinstatement with TCS, or that he is presently being harmed by any action of TCS[.]" (ECF No. 15 at 12.) Katz argues he has standing to seek injunctive relief because he indicated his intent to seek reinstatement with TCS in the Amended Complaint and because he seeks injunctive relief on behalf of the class. (ECF No. 21 at 20–25.)

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Article III standing consists of three elements. *Id.* To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these

elements." *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). "The standing inquiry . . . focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (alterations in original) (citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). A plaintiff seeking prospective relief such as an injunction must be able to demonstrate a likelihood of future injury resulting from the defendant's conduct. *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983). Generally, "former employees do not have standing to assert claims for injunctive relief since there is no immediate threat that they will be wronged again." *Gutierrez v. Johnson & Johnson*, 467 F. Supp. 2d 403, 413 (D.N.J. 2006). Courts in this circuit and of "other circuits have recognized a limited exception to this rule where the former employee seeks reinstatement." *Savage v. Temple Univ. – of Commonwealth Sys. Of Higher Educ.*, Civ. A. No. 19-6026, 2020 WL 3469039, at *7 (E.D. Pa. June 25, 2020) (collecting cases and finding plaintiff had standing to seek injunctive relief where the plaintiff was a former employee and sought reinstatement with the employer). The Court agrees and finds that a former employee seeking reinstatement with a former employer has standing to seek injunctive relief.

Here, Katz's Amended Complaint contains a request for reinstatement with TCS. (ECF No. 14 at 23.) ("Award Plaintiff . . . front- and back-pay, instatement, reinstatement, and such other equitable relief as the Court deems just and appropriate[.]"). Katz has therefore established standing to seek injunctive relief. *Savage*, 2020 WL 3469039, at *7. Accordingly, TCS's Motion to Dismiss Katz's claims for injunctive relief is **DENIED**.

## C.    Allegations of Discriminatory Hiring and Placement

TCS argues Katz's "hiring and placement claims for disparate treatment under Section 1981 (Count I) for disparate treatment under Title VII (Count II) and disparate impact under Title

VII (Count III), to the extent each of these claims rests on allegations of discrimination in hiring or placement by TCS, should be dismissed." (ECF No. 15 at 16.) Katz concedes he "does not assert claims for failure to hire or place, and disclaims any such claims to the extent the [Amended Complaint] could be read to assert such claims, such that there are no such claims to dismiss." (ECF No. 21 at 25.) In reply, TCS argues Katz's allegations regarding hiring and placement should be stricken because "class-wide discovery into hiring decisions and related statistics would be needlessly burdensome." (ECF No. 23 at 11.)

A plaintiff is the master of the complaint and has the power to choose which claims are brought in the complaint, and which claims are omitted. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). A defendant's motion to dismiss is rendered moot when the motion seeks to dismiss claims not contained in the operative complaint. *See Fisher v. Schott*, Civ. A. No. 13-5549, 2014 WL 6474216, at *5 (D.N.J. Nov. 19, 2014). Additionally, plaintiffs are free to include factual allegations in the pleadings to support their claims. Only "redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation" may be properly stricken from a pleading. *Garlanger*, 223 F. Supp. 2d at 609 (internal quotations omitted). Courts should strike pleadings only "sparingly," as it is a "drastic remedy" reserved for ensuring justice in appropriate circumstances. *United States v. Bos. Sci. Neuromodulation Corp.*, Civ. A. No. 11-1210, 2014 WL 4402118, at *3 (D.N.J. Sept. 4, 2018). "If there is any doubt as to whether a matter in a pleading should be stricken, the doubt should be resolved in favor of the pleading." *Id.*

Here, TCS seeks to convert its initial motion to dismiss into a motion to strike. To the extent TCS's motion can be construed as a motion to dismiss, the Court finds that the motion is moot because Katz concedes the Amended Complaint contains no claims for a failure to hire or

place. (ECF No. 21 at 25); *see Fisher*, 2014 WL 6474216, at \*5. To the extent TCS's motion can be construed as a motion to strike, the Court finds that Katz's allegations of TCS's discriminatory hiring and placement practices is not "redundant, immaterial, impertinent, or scandalous matter" within the meaning of Rule 12(f). (*See* ECF No. 14 ¶¶ 11–12); Fed. R. Civ. P. 12(f). Accordingly, TCS's motion to dismiss all claims based on discriminatory hiring or placement is **DENIED**.

## IV.   CONCLUSION

For the reasons set forth above, TCS's Motion to Dismiss (ECF No. 15) is **GRANTED IN PART** and **DENIED IN PART**. TCS's Motion to Dismiss Count III pursuant to Rule 12(b)(6) is **GRANTED**. TCS's Motion to Dismiss pursuant to Rule 12(b)(6) as to all claims for injunctive relief is **DENIED**. TCS's Motion to Dismiss all claims based on discriminatory hiring or placement pursuant to Rule 12(b)(6) is **DENIED** as **MOOT**. To the extent TCS's motion can be construed as a motion to strike, the motion is **DENIED**. An appropriate order follows.

*s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  August 10, 2023