NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAWN KATZ, DAVID KIRKPATRICK, CAMUEL BUZAN, AND VICTORIA XAVIER-FREYER, individually and in their representative capacity<br><br>Plaintiffs,<br><br>v.<br><br>TATA CONSULTANCY SERVICES LTD.,<br><br>Defendant. | Case No. 2:22-cv-07069 (BRM) (JRA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is a Motion to Dismiss filed by Defendant Tata Consultancy Services LTD. ("TCS"), seeking to dismiss the Third Amended Complaint of Plaintiffs Shawn Katz ("Katz"), David Kirkpatrick ("Kirkpatrick"), Camuel Buzan ("Buzan"), and Victoria Xavier-Freyer ("Xavier-Freyer") (collectively, "Plaintiffs"). (ECF No. 106.) Plaintiffs opposed Defendant's Motion (ECF No. 109), and TCS replied (ECF No. 128). Having reviewed and considered the submissions filed in connection with the motion, and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, TCS's Motion to Dismiss is **GRANTED**; TCS's request that Plaintiff's disparate impact claims be deemed futile is **DENIED**; Plaintiffs' claims for disparate impact discrimination are **DISMISSED WITHOUT PREJUDICE**; TCS's motion to dismiss claims

based on discrimination in hiring and placement is **DISMISSED AS MOOT**; and TCS's Motion for Sanctions is **DENIED**.

I. **BACKGROUND**

A. **Factual Background**

For the purpose of this Motion to Dismiss, the Court accepts the factual allegations of the Third Amended Complaint as true and draws all inferences in the light most favorable to the Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This putative class action arises from TCS's allegedly discriminatory employment practices that negatively "impact[] non-South Asians and non-Indians across the company, as well as applicants, who are disfavored in [] hiring, staffing, promotion, and termination/retention decisions." (Third Am. Compl. (ECF No. 98) ¶ 1.) TCS is an information technology ("IT") "consulting company that is headquartered in Mumbai with its U.S. headquarters in Edison, New Jersey." (*Id.* ¶ 4.) "TCS operates on a project-based model where companies contract with TCS to provide IT services . . . in lieu of maintaining in-house IT personnel." (*Id.* ¶ 12.) TCS then deploys TCS employees to service the client company until the contract terminates. (*Id.* ¶ 13.) Employees are assigned to and removed from projects by TCS. (*Id.*) Once TCS employees cease work on a project, they are "place[d] in an unallocated status," which is commonly referred to as being placed "on the bench." (*Id.*) When TCS employees are placed on the bench, the employee is unable to service any TCS clients until the employee fills other positions for different TCS clients. (*Id.*) To secure a new position with a different TCS client, benched employees must apply for specific roles

2

with specific clients within TCS. (*Id.* ¶ 9.) "Both existing TCS employees and external applicants must apply and interview for positions on TCS projects and compete for [] roles." (*Id.*) If existing TCS employees remain on the bench for too long, TCS will terminate their employment. (*Id.* ¶ 10.)

Additionally, Plaintiffs' claim TCS has a policy of favoring "[v]isa employees (who are almost exclusively South Asian and of Indian national origin)," to recoup "the investment required to secure the visas in the first place." (*Id.* ¶¶ 19–20.) According to the Plaintiffs, this is not due to an ethnic preference for South Asian workers, but rather TCS's practice of "maximiz[ing] the number of visa approvals it can secure each year," and then "utilize[ing] every visa to them maximum extent." (*Id.* ¶¶ 17 & 19.) This effectively crowds out the native-born American workforce as "available positions overwhelmingly go to visa workers," and consequently "non-visa workers [are] hired at lower rates, but also [are] fired at disproportionately higher rates." (*Id.* ¶ 26.) To retain these visa employees, TCS also gives visa-employees preferential "promotion and appraisal." (*Id.* ¶ 27.) Katz offers himself as a representative example, alleging he "was told he would be promoted . . . but that promotion never took place despite Katz's consistently strong performance . . . during his nine-year tenure." (*Id.* ¶ 33.) According to Plaintiffs, "very few non-South Asians and non-Indians are promoted to senior management roles." (*Id.* ¶ 21.) Plaintiffs allege TSC does all this out of a neutral motive "to obtain and make use of visas it has secured from the federal government's competitive lottery." (*Id.* ¶ 26.)

Katz is a naturalized U.S. citizen and resident of Texas and is of Israeli national origin and Caucasian race. (*Id.* ¶ 2.) He brings several claims against TCS on behalf of himself and a class of "[a]ll non-South Asians and non-Indians who (1) were employed by TCS, and met the criteria for a promotion, but were not promoted, and/or (2) were employed by TCS and were involuntarily terminated." (*Id.* ¶¶ 2, 3, 63.) He likewise brings claims on behalf of "[a]ll U.S. citizens who (1)

3

were employed by TCS, and met the criteria for a promotion, but were not promoted, and/or (2) were employed by TCS and were involuntarily terminated." (*Id.* ¶¶ 3, 63.)

Kirkpatrick is another U.S. citizen, born in the United States and is Caucasian. (*Id.* ¶ 4.) He brings claims for discrimination against himself as well as "[a]ll non-South Asians and non-Indians," and "[a]ll U.S. citizens," harmed by TCS's allegedly discriminatory practices. (*Id.* ¶ 63.)

Buzan is a U.S. citizen, born in the United States and is Caucasian. (*Id.* ¶ 5.) He brings claims for discrimination against himself as well as "[a]ll non-South Asians and non-Indians," and "[a]ll U.S. citizens," harmed by TCS's allegedly discriminatory practices. (*Id.* ¶ 63.)

Finally, Xavier-Freyr is a citizen of the United States, born in the United States and is of American national origin and African American race. (*Id.* ¶ 6.) Like the other Plaintiffs, she brings claims for discrimination against herself as well as "[a]ll non-South Asians and non-Indians," and "[a]ll U.S. citizens," harmed by TCS's allegedly discriminatory practices. (*Id.* ¶ 63.)

**B.    Procedural Background**

This is the fourth complaint before the Court. The Initial Complaint was filed before this Court on December 22, 2022, with a single representative party, Shawn Katz, who alleged both disparate treatment and disparate impact on the basis of race or national origin against TCS on behalf of "[a]ll non-South Asians and non-Indians who (1) were employed by TCS, and met the criteria for a promotion, but were not promoted, and/or (2) were employed by TCS and were involuntarily terminated." (Pls.' Initial Compl. (ECF No. 1) ¶¶ 30, 39–52.) TCS filed a motion to dismiss this Initial Complaint (Tata Initial Mot. to Dismiss (ECF No. 8)), but before the Court rendered judgment, Katz voluntarily withdrew his Complaint and filed the First Amended Complaint. (Pls.' First Am. Compl. (ECF No. 14).) TCS maintained its position that Katz's claims must be dismissed because he had failed to allege a case for disparate impact, and he lacked

4

standing to seek injunctive relief. (TCS Mot. to Dismiss First Am. Compl. (ECF No. 15) at 3.) The Court held while Katz's claim for injunctive relief could stand, he had failed to allege sufficient support for his disparate impact claim because the specifics of his allegations "sound in disparate treatment." (Op. on TCS's Mot. to Dismiss First Am. Compl. (ECF No. 30) at 11.)

Katz sought the Court's leave to amend his Complaint to rectify the issues found in the prior complaint (Katz's Mot. for Leave to File Second Am. Compl. (ECF No. 34)), which the Court granted (Order Granting Leave to Amend (ECF No. 40)).

The Second Amended Complaint added three additional named Plaintiffs: "David Kirkpatrick, Camuel ("Craig") Buzan, and Victoria Xavier-Freyr." (Second Am. Compl. (ECF No. 43) at 3–4.)

Plaintiffs then moved to file a Third Amended Complaint to allege TCS, on top of the other discriminatory practices, engaged in "citizenship discrimination" against the named plaintiffs and members of the class, due to an opinion allowing such claims in the Ninth Circuit. (Plaintiffs' Mot. for Leave to File Third Am. Compl. (ECF No. 72) at 1.) In opposition, TCS (1) pointed out Katz's Initial Complaint included language accusing TCS of "unlawful discrimination on the basis of . . . citizenship" (ECF No. 1 ¶ 43), only to drop the language in amendment (ECF 14 ¶ 43), and (2) argued citizenship was not a recognized category of discrimination (TCS's Opposition to Mot. for Leave to File Third Am. Compl. (ECF No. 76) at 3, 6–7.) However, TCS withdrew its opposition to Plaintiffs' Motion for Leave to File Third Amended Complaint and instead planned to move to dismiss the Third Amended Complaint once filed. (TCS's Brief in Support of Mot. to Dismiss (ECF No. 106–1) at 1.) Plaintiffs filed their Third Amended Complaint on April 17, 2025. (ECF No. 97.)

5

Now, TCS challenges the sufficiency of Plaintiffs' Third Amended Complaint's claim pertaining to the alleged disparate impact of TCS's policies, arguing Plaintiffs fail to identify a facially neutral policy and that their claim sounds more in disparate treatment than disparate impact. (ECF No. 106-1 at 3–4.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability

6

requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

**III.   DECISION**

TCS moves to dismiss Plaintiffs' claims based on the theory that TCS's facially neutral policies have had a discriminatory impact on Plaintiffs and the classes they represent. (ECF No.

7

106-1 at 1) According to TCS, Plaintiffs are merely restating their disparate treatment claim with new language, and their claims should therefore be dismissed. (*Id.* at 8–9.) TCS also asks the court to dismiss "parts of" Plaintiffs' other claims it believes are based on "discrimination in hiring or placement," which the Plaintiffs expressly disclaim. (*Id.* at 18–19.) Finally, TCS requests the plaintiffs be sanctioned, in the form of attorney's fees and costs, for the "bad faith" the Plaintiffs showed in filing multiple amended complaints containing the same deficient allegations. (*Id.* at 22.)

### A. Plaintiffs' disparate impact claim alleges intentional, disparate treatment and does not identify a facially neutral policy.

Disparate impact is a type of discrimination claim brought when a company has a "facially neutral" policy, which nevertheless "caused a significantly discriminatory . . . pattern." *Green v. City of Phila.*, Civ. A. No. 21-1034, 2022 WL 1165644, at *2 (3d Cir. Apr. 20, 2022) (quoting *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464 (3d Cir. 2011)). Plaintiffs allege TCS has a facially neutral policy of "falsifying employee roles . . . prioritizing placement of visa employees in U.S. positions, . . . [and] appraising visa employees more highly so that they are promoted and remain in the U.S." (ECF No. 98 ¶¶ 18–22.) Plaintiffs' interpretation is that this is not disparate treatment since it serves the goal of "maximiz[ing] the number of visa approvals it can secure each year," and "utiliz[ing] every visa to the maximum extent," rather than stemming from a preference for South Asian employees. (*Id.*)

TCS objects, arguing (1) a policy of favoritism toward visa-holders is not facially neutral but instead is simply another allegation of disparate treatment, and (2) even if the alleged policies were neutral on their face, Plaintiffs' allegations suggest the policies are still enacted in an intentionally discriminatory manner. (ECF No. 106-1 at 8–9, 15.) Disparate treatment and disparate impact are different forms of discrimination redressable under Title VII of the Civil

8

Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. These claims "share the same ultimate legal issue," namely unfair discrimination, and instead "are primarily distinguished by 'the *factual* issues that typically dominate'—namely, whether a facially neutral policy is discriminatory in operation." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 71 (3d Cir. 2017) (emphasis original) (quoting *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977 (1988)). Disparate impact claims redress employment policies that are "fair in form, but discriminatory in operation," and typically "focus on statistical disparities." *Id.* at 69.

Plaintiffs have failed to identify such a policy here, and instead simply provide additional support for their disparate treatment claim. "[T]o state a claim for disparate impact, a plaintiff is required to identify the specific policy at issue." *MacLean v. Wipro Ltd.*, Civ. A. No. 20-3414, 2022 WL 4550629, at *6 (D.N.J. Sept. 29, 2022). A claim may fail this hurdle if it "alleges 'discrete incidents' that resulted in discrimination as opposed to 'specific policies,'" *id.* at 6, or if the plaintiff identifies a "facially discriminatory policy," rather than one that is facially neutral. *Healey v. Southwood Psychiatric Hosp.*, 78 F.3d 128, 131 (3d Cir. 1996). Moreover, "even when a facially neutral policy is identified, allegations that the policy was applied in a deliberately discriminatory way prevents the policy from serving as the basis for a disparate impact claim." *MacLean v. Wipro Ltd.*, No. CV 20-03414, 2025 WL 1806644, at *4 (D.N.J. June 30, 2025).

Here, Plaintiffs' claim fails on the latter two limitations. According to the Plaintiffs, they have identified the following "facially neutral" policies: (1) TCS "seeking to maximize the number of visas it obtains" and "prioritize[ing] visa workers for positions," to recoup the cost of obtaining the visa; (2) TCS had a policy of providing non-visa employees "fewer promotions," which are instead "awarded to visa employees to ensure they are retained in the U.S.;" and (3) "non-visa employees being terminated at disproportionately high rates," as a consequence of the prior two

policies. (ECF No. 109 at 7–8.) These policies are each essentially rephrased versions of the allegedly facially neutral policies this Court previously rejected. (ECF No. 30 at 11.) Namely, in his First Amended Complaint, Katz alleged: (1) "TCS has a preference for and prioritizes [] visa holders for U.S. positions"; (2) "TCS's policy of terminating employees who remain on the bench for too long"; (3) "TCS's policy of promoting only those who have served a set number of years with TCS and received consecutive high appraisal scores"; and (4) "TCS's policy of allowing TCS personnel in India to review and revise performance scores." (ECF No. 21 ¶¶ 11, 12, 14.) Just as the Court found each of those policies "sounds in disparate treatment, rather than disparate impact," so too are the newly identified policies alleged by the Plaintiffs' policies of intentional discrimination, rather than facially neutral policies with disparate impact. (ECF No. 30 at 11.)

Despite the similarities to their initial disparate impact claim, Plaintiffs bring three arguments as to why these alleged policies are sufficient to bring a disparate impact claim. First, Plaintiffs argue when brought in the alternative, "TCS's *reason* for favoring visa workers is dispositive" as to whether a disparate impact claim has been stated. (ECF No. 109 at 13.) Second, they argue the policies identified are, in fact, facially neutral because "a policy that intentionally discriminates in favor of *visa workers* does not necessarily do so with respect to *race or national origin*." (*Id.* at 15 (emphasis original).) Finally, Plaintiffs argue that since the alleged policies "were not applied by TCS in an intentionally discriminatory manner," they do not fail under *Healey*. (*Id.* at 17.)

In its prior decision in this case, this Court held alleged policies regarding "preference for . . . visa holder . . . sound[] in disparate treatment rather than disparate impact." (ECF No. 30 at 5.) Yet, Plaintiffs claim in so doing "the Court made clear that TCS's *reason* for favoring visa workers is dispositive, of whether a policy implementing that preference is facially neutral." (ECF No. 109

10

at 13.) This is a misreading of this Court's prior decision, which is clear that "intentionally award[ing] visa-holders higher appraisal scores," at the expense of "non-South Asian and non-Indian counterparts," and similar policies "prioritizing visa holders" are all policies of intentional discrimination—rather than facially neutral policies. (ECF No. 30 at 12.) A plaintiff may assert both disparate impact and disparate treatment claims on the same set of facts, *see, e.g., Smith v. City of Jackson*, 544 U.S. 228, 231 (2005), but those facts must be sufficient to both causes of action. Plaintiffs' failure to state a claim is due to the substance of the discrimination alleged, not how they worded TCS's motives.

Despite the Court's prior decisions, Plaintiffs contend "as a practical matter, it is critical to allow Plaintiffs to simultaneously pursue both disparate treatment and disparate impact claims," because otherwise "TCS will ultimately argue that it did not *intend* these disparities," and should therefore not be liable. (ECF No. 109 at 14.) As an initial matter, to whatever degree TCS chooses to argue it lacked intent to discriminate, that is its prerogative. Lack of discriminatory intent is a well-established defense to a disparate treatment claim—not a basis for a disparate impact claim. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) ("A disparate-treatment plaintiff must establish "that the defendant had a discriminatory intent or motive.").

Further, Plaintiffs' concerns about TCS's potential arguments are misplaced. As TCS itself acknowledges, intentionally favoring visa holders is disparate treatment on the basis of national origin. (ECF No. 110 at 2.) This remains true, even when the policy was motivated by a desire to protect the visa-status of employees, rather than "malice or discriminatory animus." *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 177 (3d Cir. 2005) (explaining "where a plaintiff demonstrates . . . disparate treatment through explicit facial discrimination . . . the focus is 'on the explicit terms of the discrimination,'" rather than the defendant's motives (citation omitted)

11

(quoting *Int'l Union, United Auto. Aerospace & Agric. Implement Workers v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991))); *see also Horizon House Developmental Servs., Inc. v. Twp. of Upper Southampton*, 804 F. Supp. 683, 696 (E.D. Pa. 1992), *aff'd*, 995 F.2d 217 (3d Cir. 1993) ("[T]o prove intentional discrimination it is not necessary to show an evil or hostile motive.").

The second argument also fails. Plaintiffs are correct a policy may discriminate, and still be facially neutral, so long as it is not discriminating against a protected class. *Dothard v. Rawlinson*, 433 U.S. 321, 329 (1977) (finding policies discriminating through "height and weight restrictions" had a disparate impact on female applicants). Plaintiffs argue the policies in question discriminate based on visa status—rather than "race or national origin" per se. (ECF No. 109 at 15.) However, that does not mean "people of all races and national origins can be visa workers," as Plaintiffs claim. (*Id.*) As TCS points out, while a policy prioritizing visa workers may still negatively impact South Asians (since a naturalized South Asian immigrant would not have a visa), it is definitionally "facially discriminatory against Americans." (ECF No. 110 at 2.) For this reason, this Court, and others in the district, have consistently held claims of intentional discrimination based on visa-status "sound in disparate treatment, as opposed to disparate impact." (ECF No. 30 at 13); *see also MacLean v. Wipro Ltd.*, Civ. A. No. 20-3414, 2022 WL 4550629 at *8 (D.N.J. Sept. 29, 2022).

Finally, according to Plaintiffs, none of the policies they identify were allegedly applied in an intentionally discriminatory way, again because they are "allegations of intentional discrimination in favor of *visa employees*." (ECF No. 109 at 17.) This argument fails for the same reason as the preceding arguments—intentional discrimination against visa employees sounds in disparate treatment. *MacLean*, 2022 WL 4550629 at *8. However, even where Plaintiffs have identified policies with universal application, such as the requirement that employees "have served

12

in his or her role for a set number of years, and received consecutive high appraisal scores" (ECF No. 98 at 10), or have "the objective performance index score and performance band (the letter rating) assigned by an employee's manager and have the authority to change the performance band" arbitrarily (*id.* at 20 – 21), the Complaint makes clear these policies are in pursuit of the broader goal of "visa employees being prioritized for placement in U.S. roles," and to award promotions "to visa employees to ensure they are retained in the U.S." (*Id.* at 13.) Therefore, even were Plaintiffs to have identified facially neutral policies, those policies were allegedly implemented in an intentionally discriminatory manner, destroying any disparate impact claim. Accordingly, this claim is **DISMISSED.**

### B. Plaintiffs have not repeatedly failed to cure deficiencies with their disparate impact claim, and their claim is not futile.

Having established Plaintiff has failed to state a claim for disparate impact, TCS requests the Court dismiss the claim with prejudice and without leave to amend. (ECF No. 106-1 at 16.) According to TCS, Plaintiffs "were put on notice as to the deficiencies in their complaint," and "failed to properly cure this deficient claim," despite multiple amendments since the first ruling. (*Id.*) In reply, Plaintiffs point out—despite the multiple amendments—most of those amendments were for unrelated issues, and this is Plaintiffs' "first attempt to cure deficiencies" in the disparate impact claim. (ECF No. 109 at 20.) The law is clear "*repeated failure* to cure deficiencies by amendments" may justify the decision to deny a plaintiff leave to amend, but a single failure to cure a deficiency does not meet that bar. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Scalercio-Isenberg v. Select Portfolio Servicing, Inc.*, Civ. A. No. 22-2705, 2024 WL 658263, at *10 (D.N.J. Feb. 16, 2024) (explaining where there is "only one Amended Complaint" attempting to cure the deficiencies of a motion to dismiss, Plaintiff has not "repeatedly failed to cure deficiencies").

13

Though TCS does not argue any amendment would be substantively futile, the decision to grant leave to amend rests within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Rsch. Inc.*, 401 U.S. 321, 330 (1970). An amendment is futile if it "is frivolous or advances a claim . . . that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990). Plaintiffs have identified standardized employment policies, such as terminating employees with a certain period of time on the bench (ECF No. 98 ¶ 28), or having TCS personnel in India review and edit the performance scores of employees they may not have worked with (*id.* ¶ 34), which may, with additional factual support, form the basis of a disparate impact claim. Plaintiffs' disparate impact claim is therefore not futile, and the dismissal is **WITHOUT PREJUDICE**.

### C.     TCS's motion to dismiss claims based on hiring and placement remain moot.

Alongside its motion to dismiss Plaintiffs' claims for disparate impact, TCS requests the court also dismiss "parts of" Plaintiffs' other claims supposedly pertaining to "discrimination in hiring and placement," despite the Court's prior rejection of this very argument in its prior Opinion. (ECF No. 106-1 at 18–19; ECF No. 30 at 14–15.) If a defendant is responding to an amended complaint where "the allegations are so altered" as to be substantively different, "the defendant is justified in asking the Court to review them afresh. If not, however, a second motion to dismiss might amount to an untimely motion for reconsideration, a contravention of the law of the case, or even a violation of Fed. R. Civ. P. 12(g)(2)." *Bayer Healthcare Pharms. Inc. v. RJ Health Sys. Int'l LLC*, Civ. A. No. 15-6952, 2017 WL 253954, at *1 (D.N.J. Jan. 20, 2017).

Here, TCS faced several allegations from new plaintiffs: Kirkpatrick, Buzan, and Xavier-Freyer. In their claims, the new plaintiffs included supporting statements of fact regarding the alleged "hiring and placement" practices of TCS. Similar statements of fact were made by Katz in

14

the Initial Complaint before this Court. (ECF No. 1 ¶¶ 16–17, 40–51.) In response to these statements, TCS filed a motion to dismiss parts of Counts I, II, and IV, which this Court denied. (ECF No. 30 at 14–16.) The Court found TCS's motion moot because Plaintiffs made "no claims for a failure to hire or place" American employees. (*Id.* at 15.) TCS acknowledged that, the near-identical form the new plaintiffs' allegations took meant "Plaintiffs do not intend to assert claims of discrimination in hiring and placement," but decided to move to dismiss regardless, "out of an abundance of caution." (ECF No. 106-1 at 18–19.)

In response, Plaintiffs confirmed that they were not asserting any independent claims alleging discrimination in hiring. (ECF No. 109 at 23.) Rather, the sections TCS complains of are simply factual allegations, made to support the claims Plaintiffs have actually brought. *Id.* Where a defendant moves to dismiss claims which are not contained in the complaint, that motion is moot. *See Fisher v. Schott*, Civ. A. No. 13-5549, 2014 WL 6474216, at *5 (D.N.J. Nov. 19, 2014). Accordingly, TCS has withdrawn its motion. (ECF No. 110 at 9.)

Accordingly, TCS's Motion to Dismiss Parts of Claims I, II, and IV, pertaining to alleged discrimination in hiring and placement, are **DISMISSED AS MOOT**.

> **D.     Plaintiffs' failure to state a claim for disparate impact does not rise to the level of vexatious litigation and does not warrant sanctions.**

Although the Court may agree Plaintiffs' current disparate impact claim cannot be sustained, TCS's demand that Plaintiffs be sanctioned is denied. According to TCS, it has faced "the exact same disparate impact allegations," meaning it must "now defend against this meritless claim an absurd sixth time in just over two years." (ECF No. 106-1 at 22.) "It . . . [is] well settled in the Third Circuit that 28 U.S.C. § 1927 requires a finding of four elements for the imposition of sanctions: [the offending attorney] '(1) multiplied proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; (4) with bad faith or with intentional

15

misconduct.'" *In re Beers*, 399 F. App'x 748, 749 (3d Cir. 2010) (citing *LaSalle Nat'l Bank v. First Conn. Holding Grp., LLC*, 287 F.3d 279, 288 (3d Cir. 2002).) Sanctions should only be granted in "exceptional circumstance[s]." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 297 (3d Cir. 2010). TCS suggests the Third Amended Complaint "advanced claims [that] were meritless, [and] that counsel knew or should have known," were meritless, and that Plaintiffs did so anyway as a form of "harassment." *In re Prudential Ins. Co. Am. Sales Practice Litig. Actions*, 278 F.3d 175, 188 (3d Cir. 2002) (quoting *Smith v. Det. Fed'n of Teachers, Local 231, etc.*, 829 F.2d 1370, 1375 (6th Cir. 1987)).

Aside from the high burden TCS must meet, its attempt to levy sanctions against Plaintiffs' attorneys fails for the simple reason the allegations it makes against the Plaintiffs are simply untrue. TCS argues it is responding to Plaintiffs' disparate impact claim for "the sixth time in just over two years." (ECF No. 106-1 at 23.) In making this claim, TCS cites not just its motions to dismiss but also its opposition to Plaintiffs' requests for leave to amend—motions it lost, as the court found the claim was not futile. (*Id.*; *see also* ECF No. 97.) Although TCS has included objections to Plaintiffs' disparate impact claim in each of these responses, this is only the second time the Court has considered the merits of Plaintiffs' disparate impact claim. (ECF No. 30 at 8.) Most of Plaintiffs' amendments addressed different issues, such as standing to seek injunctive relief, or to add a claim for discrimination based on citizenship. (*See, e.g.*, ECF No. 14 ¶ 16; ECF No. 98 ¶ 88.) Despite asking for an exceptional remedy, TCS provides no evidence beyond the number of times it has replied, and its own sense that the charges are "absurd," to suggest Plaintiffs have acted "unreasonably and vexatiously." (ECF No. 106-1 at 22 (citing 28 U.S.C. § 1927).)

Nevertheless, TCS insists the very fact it has faced disparate impact allegations in four different complaints is itself harassment. (ECF No. 106-1 at 22.) Yet TCS ignores a critical factor:

16

Plaintiffs have filed each of these amendments with explicit permission from the Court. (Text Order dated April 17, 2025 Granting Leave to Amend (ECF No. 97).) TCS provides no justification for how Plaintiffs' attorneys "should have known," *In re Prudential*, 278 F.3d at 188, their attempt to amend their claim was meritless when the Court found their claim was not futile and invited them to file an amendment. (ECF No. 97.) It is beyond argument that sanctions "must . . . not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute." *Scott v. Vantage Corp.*, 64 F.4th 462, 474 (3d Cir. 2023). The mere fact a claim is dismissed does not mean it rises to the level of "patently unmeritorious or frivolous," where sanctions are justifiable. *Ario*, 618 F.3d at 297.

Plaintiffs' conduct, in filing an amended complaint invited by the court, is objectively reasonable. Accordingly, TCS's motion for sanctions is **DENIED**.

### IV. CONCLUSION

Accordingly, for the forgoing reasons, TCS's Motion to Dismiss pursuant to Rule 12(b)(6) (ECF No. 106) is **GRANTED** and Claim III of Plaintiffs' Third Amended Complaint is **DISMISSED WITHOUT PREJUDICE**. TCS's Motion to Dismiss all claims based on discriminatory hiring or placement pursuant to Rule 12(b)(6) is **DENIED AS MOOT**. Finally, TCS's motion for sanctions is **DENIED**. An appropriate order follows.

**Date: January 7, 2026**　　　　　　　　　　　　　　　*s/ Brian R. Martinotti*
　　　　　　　　　　　　　　　　　　　　　　　　　**HON. BRIAN R. MARTINOTTI**
　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**